| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 4:17-CR-30(1) |
| § | |
| JOSE CHAVEZ-CEJA § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Jose Chavez-Ceja's ("Chavez-Ceja") *Pro Se* Motion for Compassionate Release (#95), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of the Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#97). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

Chavez-Ceja's offense of conviction stems from his involvement in a drug-trafficking conspiracy. On February 9, 2017, a federal grand jury in the Eastern District of Texas returned an Indictment charging Chavez-Ceja and a co-defendant with Conspiracy to Possess With the Intent to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine or 50 Grams or More of Methamphetamine (Actual). On June 14, 2019, Chavez-Ceja pleaded guilty to the charged offense pursuant to a non-binding plea agreement. On September 16, 2019, the court sentenced him to 235 months' imprisonment, followed by a 5-year term of supervised release. Chavez-Ceja is currently housed at the Federal

Correctional Institution Oakdale II, located in Oakdale, Louisiana ("FCI Oakdale II"). His projected release date is June 27, 2035.

II.     Analysis

On December 21, 2018, President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means

to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not

provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In Chavez-Ceja's motion, he claims that he "has timely and diligently exhausted the required administrative process by first filing a written request for Compassionate Release with the institution's Warden." Chavez-Ceja attached a copy of his request, dated June 29, 2020, in which he based his request on the same grounds as set forth in his present motion. On July 23, 2020, acting Warden S. Ma'at denied Chavez-Ceja's request, noting:

> According to the Clinical Director, [Chavez-Ceja has] not been diagnosed with a terminal, incurable disease with a life expectancy of eighteen months or less. [He does] not suffer from a chronic or serious medical condition related to the aging process and the Bureau of Prisons (BOP) can provide conventional treatment to improve [his] condition. As such, [he does] not meet the criteria for a Compassionate Release.

Although Chavez-Ceja complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment to time served.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the

following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

A.   Medical Condition

In the instant motion, Chavez-Ceja contends that he is eligible for compassionate release due to his medical condition, specifically: 1) Blindness, both eyes, 2) Chronic Obstructive Pulmonary Disease ("COPD"), 3) Enlarged Prostate without lower urinary tract symptoms, 4) Hyperlipidemia, 5) Retinopathy, diabetic retinopathy, and 6) Type 2 Diabetes Mellitus with diabetic neuropathy. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

"suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

According to his Presentence Investigation Report ("PSR"), prepared in 2019, Chavez-Ceja informed Probation that he suffered from insulin-dependent diabetes, which caused him to have poor vision. While in pretrial detention in 2018 and 2019, Chavez-Ceja was treated for diabetes, hypertension, chronic pain, hyperlipidemia, insomnia, an enlarged prostate, and gastroesophageal reflux disease and was taking prescription medication to treat these conditions. BOP medical records from May 2020 confirm that he is blind in both eyes and suffers from COPD, constipation, an enlarged prostate, hyperlipidemia, retinopathy, Type 2 diabetes with diabetic neuropathy, and essential (primary) hypertension. Chavez-Ceja is currently taking medications, including insulin, atorvastatin, dorzolamide/timolol, latanoprost, lisinopril, metformin, and tamsulosin, to treat his medical issues. As for his "blindness," Chavez-Ceja's BOP medical records indicate that, after undergoing eye surgery, his cellmate told medical staff, "[Chavez-Ceja] says his vision is getting better. Used to be nothing, now like looking through water. His eyes are sensitive to the light, though. But a blessing that his vision has improved." Moreover, these conditions did not preclude him from committing the offense of conviction, from illegally reentering the United States from Mexico in 2017, or from engaging in decades of prior criminal activities.

According to his BOP records, Chavez-Ceja is classified as a Care Level 2 inmate. Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months," and "[t]heir medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring." Probation's investigation revealed that Chavez-Ceja ambulates successfully with the assistance of another person and is currently in the general prison population. The Government recognizes that "these chronic conditions present 'a serious physical or medical condition.'" Although the court acknowledges Chavez-Ceja's multiple afflictions, his medical summary does not meet the criteria listed above. None of these medical conditions is terminal or substantially diminishes his ability to provide self-care. Thus, Chavez-Ceja has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.

Even if Chavez-Ceja's medical condition constituted an extraordinary and compelling reason under § 3582(c)(1)(A), "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94. Moreover, granting Chavez-Ceja compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an

extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id*. In the instant case, releasing Chavez-Ceja after he has served only approximately 28 months of his 235-month sentence would similarly minimize the impact of his crime and the seriousness of his offense.

    B.    <u>Age</u>

Chavez-Ceja, age 65, also cites his age as grounds for compassionate release. The USSG provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B). Here, although Chavez-Ceja is 65 years old, there is no indication that he is experiencing serious deterioration in his physical or mental health due to the aging process. Moreover, as of the date of his motion, Chavez-Ceja had served just 12 percent of his 235-month sentence, far less than the lesser of 10 years or 75 percent of his term of imprisonment.

Alternatively, 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment for age-related reasons when:

>the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(ii).  As stated above, Chavez-Ceja is 65 years of age, which is less than the stated minimum age of 70, and has served just over 2 years in prison, far below the requisite 30 years.  Accordingly, Chavez-Ceja also does not meet the alternative requirements for age-related compassionate release stated in 18 U.S.C. § 3582(c)(1)(A)(ii).

      C.      <u>"Other" Reasons</u>

Chavez-Ceja's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine

whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Chavez-Ceja for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Chavez-Ceja's situation. Chavez-Ceja maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Chavez-Ceja expresses concern regarding the spread of COVID-19 among the prison population. Nevertheless, as of November 9, 2020, the figures available at www.bop.gov list 9 inmates (out of a total inmate population of 829) and 9 staff members at FCI Oakdale II as having confirmed positive cases of COVID-19, 15 inmates and 6 staff members who have recovered, and 1 inmate who has succumbed to the disease. Thus, it appears that the facility where Chavez-Ceja is housed is handling the outbreak appropriately and providing adequate medical care.

Although Chavez-Ceja expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Chavez-Ceja, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about

the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).  Chavez-Ceja has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served and warrant his release from imprisonment.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. Chavez-Ceja's offense of conviction stems from his participation in an international drug-trafficking conspiracy that involved the importation and distribution of substantial quantities of methamphetamine (actual).  Throughout the conspiracy, Chavez-Ceja supplied co-conspirators with multi-gram quantities of methamphetamine from various sources for distribution to others in

the Eastern and Northen Districts of Texas. Chavez-Ceja worked for a Mexican source of supply and was found responsible for the sale of 986.1 grams of methamphetamine (actual) to a confidential source.

Chavez-Ceja has an extensive criminal history, including prior convictions for unlawful possession of a controlled substance (cocaine), unlawfully carrying a weapon in a tavern, possession with intent to deliver a controlled substance (cocaine), unlawful delivery of a controlled substance (cocaine) (3), unlawful delivery of a controlled substance (methamphetamine), and illegal reentry of a removed alien. He was on parole for several drug offenses at the time of his offense of conviction and has used a variety of aliases to conceal his criminal activities. Chavez-Ceja is present in the United States illegally. As Probation observes:

> A review of Mr. Chavez-Ceja's presentence report reflects a fairly extensive criminal record dating back to 1989. He has multiple convictions for drug distribution offenses, multiple previous deportation orders, and a prior federal conviction for Removed Alien out of the District of New Mexico. His pattern of committing subsequent felony offenses suggests a heightened risk for recidivism if released from imprisonment.

In view of the circumstances surrounding Chavez-Ceja's offense of conviction and his extensive criminal history, the court cannot conclude that he would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No.

CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. Since March 26, 2020, the BOP has placed 16,777 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Ambriz v. United States*, ___ F. Supp. 3d ___, No. 4:20-CV-568-P, 2020 WL 3066861, at *2 (N.D. Tex. June 5, 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any

> verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Chavez-Ceja's track record is similarly a poor one.

In short, Chavez-Ceja has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.   Conclusion

Consistent with the foregoing analysis, Chavez-Ceja's *Pro Se* Motion for Compassionate Release (#95) is DENIED.

14

SIGNED at Beaumont, Texas, this 10th day of November, 2020.

                                                MARCIA A. CRONE
                                          UNITED STATES DISTRICT JUDGE